The last case this morning is David Johnson v. Secretary of Veterans Affairs, 2024-1898. Mr. Murray. Thank you, Ron, and may it please the Court. The Veterans Court misinterpreted VA's reduction regulations, specifically 38 CFR sections 3.344, 4.2, and 4.13, which requires VA to establish actual improvement in the overall disability picture to include under the ordinary conditions of life and work and seeking work. Here, Mr. Johnson's overall ankle disability picture did not improve. Instead, different VA examiners reviewed the exact same evidence and reached different conclusions regarding the presence or absence of ankylosis. In other words, the only thing that has changed is the descriptive term used to describe Mr. Johnson's bilateral ankle range of motion. And under section 4.13, this does not represent the actual change that is required to reduce the disability rate. I'm a little confused about this whole argument, and maybe that's because some of these cases become confusing because one of the issues we have to decide is whether or not this is a question of law. Yes, Your Honor. Which we have in view. It seems to me that you get a question of law on your side based on a predicate that I don't think has been established from the record, by the record. You start off by saying there's been no reduction. This was an error in the first place, right? And that's why you say they violated the reg. There's been no improvement, Your Honor. There's been no improvement. Yes, Your Honor. But that's a factual determination. And the board and the CABC, they didn't say there's no improvement, but we're applying this reg. They say there has been improvement. So why, where do we get into the regulation, into whether or not they correctly construed the regulation, when the predicate is one that they never accepted? Yes, Your Honor. So this Court, as you mentioned, this Court has jurisdiction over questions of law. And here is the interpretation of two regulations. First, what we're talking about now, Section 4.13, and the requirement of actual change. And the Veterans Court So you're saying, what are you saying the legal error was? That they applied the regulation incorrectly, right? You're talking about the application of the regulation. No, Your Honor. It's their interpretation of the phrase actual change. So you're saying they misinterpreted actual change to include what? To include error. But that's not what they said. Yes, Your Honor. It is. On page 9 of the appendix, the Veterans Court found that the evidence confirms that a felon's initial examiners marked ankylosis in error. And so once the Veterans Court found there to be error, Yeah, but they made a statement about that. But the basis for their conclusion was setting that inconsistency aside, even if the initial examiner had noted it correctly, they no longer had it. Yes, Your Honor. But I think that is an example of the Court trying to have it both ways here. And I think if you read that in context with what the Court said on, you know, later on, on page 10, it speaks to how, you know, the Court held that the Board correctly concluded that a felon is ankylosis, but then calls it a legal reality, if not a medical one. And that's where the legal error is. Well, it is a legal reality, isn't it? I'm sorry. I mean, the statute requires this initial examination holds unless it's taken back by a CUE. Yes, correct, Your Honor. So the legal reality of this case is this final decision that was accepted by the VA, that he had the 40 percent, and then the evidence as to whether or not that should be reduced. That is the legal reality, right? Well, that's the legal reality, Your Honor, but that's not the medical reality. Well, nobody has proven or disproven the medical reality because we don't have a CUE proceeding. Well, exactly, Your Honor. And that's the error of law here is that the Veterans Court relied on error to find actual improvement. So you're saying because as an alternative or because in background they said, we're not sure whether this was an error, this could have been an error. So you're saying they were obligated to go for a CUE, therefore, and not to go for a reduction? Yes, Your Honor. Okay. Well, let me ask you about that. What is the practical consequence of all of this? Does it get you or anyone here? If you've got a remand, we'd say, okay, so the VA decides, okay, let's do a CUE. And they go in for a CUE. If they win, then you still lose. Yes, Your Honor. Even if they lose, that just puts them into the basket they're currently in because if there's no CUE, if there's a determination that there's no CUE, then we're where we started here because then it becomes, no, it wasn't an error, therefore, there's been a reduction. And then we're on the exact case we have before us now. So spinning the wheels on technicality, am I wrong about that in terms of the consequences of whatever goes on here? I believe so, Your Honor, respectfully. Again, I think, you know, the veteran court's strong language here regarding the error. You know, I understand that they try to switch questions. I'm sorry to keep asking too many questions. But take the question I have about what the consequences are for you. If you prevail here, if the VA goes in for a CUE, if the government wins, case over, right? Yes, Your Honor. If the government loses, case is now in the basket that this case is in, which is there's been an actual reduction because there was no CUE, and the original determination was not an error. So there is a reduction, which is precisely the analysis we went through in this case, right? If the VA – if you find, Your Honor, that the VA should have gone the CUE route, then the board's decision is void ab initio because the board – But they go for a CUE. But let's assume they go for – you say there should have been a CUE. Yes, Your Honor. I've never seen a circumstance where we're forcing the VA to say something's an error where they're perfectly comfortable to say that there are a lot of reductions. But leave that aside. Okay, they go for a CUE. Yes, Your Honor. And I agree with you. If there is CUE, then, you know, then the decision would be revised at the date of the original decision, and we would be in the same place. But if the board's decision is void ab initio, and there is later determined not to be CUE, then Mr. Johnson would maintain his 40 percent ratings. If there's no CUE, can't the board then – what precludes the CAVC and the board to do exactly what they've already run through here over a period of years, which to say if that's the decision, if there's no CUE, then it was a reduction. Because if there's no CUE, that means he started with the 40 percent, and now he doesn't have it, and there is indisputed evidence that the more recent examinations established that he doesn't have – I can't pronounce the term – Ankylosis.  Then we're exactly where we are now, which has been – there's been a reduction. Do you understand why it's a practical matter in terms of helping your client or giving your client some relief? You may get technical legal reality relief, because at one point this decision is void ab initio, as you say. But as a consequence of this, the result remains the same. That's why I emphasize, Your Honor, that we have to look at the entire – the overall disability picture for his ankles. And if we take out that one term, ankylosis, that's just the descriptive term to describe Mr. Johnson's range of motion for his ankles. And under 4.13, again, it requires actual change and not just a change in descriptive terms. So if the initial decision was correct, then the argument is, has there been an actual change? Correct, Your Honor. And all the board did – This case seems overwhelming. We're not allowed to review it in any event. It would be unreviewable by us. So the board and the CIDC would be free to have the exact same analysis they already have done. Well, only if we look at that one term, ankylosis, Your Honor. And if you take out that one descriptive term, then Mr. Johnson's ankle disabilities, range of motion stayed essentially the same. Over the course of the appeal, he developed instability, whereas he had none. He developed a loss of muscle strength, whereas he had none. And so if you look at the overall disability picture, taking out that one descriptive term, I would say it is not clear at all that his disabilities ever improved. Did you raise any legal issue that doesn't have a factual predicate? Because when you were having a conversation with Judge Prost initially, and we're just kind of seeing whether or not the case falls within our jurisdiction, there was the conversation back and forth about to get to one of the legal issues that you were presenting to us, there is kind of a factual predicate potentially that had to be addressed. It is, Your Honor. As I mentioned, Section 4.13 requires actual change. And the parties agreed that the last sentence of that section said that it doesn't apply in cases of error, for VA to correct errors. And the board and the Veterans Court was very clear in that, per their findings, the initial examiner's notation of ankylosis was an error. And so once it was determined to be error, that takes us out of Section 4.13. And so it was a legal error for the Veterans Court to apply that regulation. I'm sorry. That wasn't a final decision that dislodges. That doesn't have the consequences of a CUE. Well, no, it doesn't, Your Honor. Right. But that's the error of law, is that no one has undergone the CUE analysis. Well, that would be the error. There might be an error of law if the board said, full stop, this was an error in the first instance, and so we should affirm this. I agree. That would be full stop, did they correctly apply the regulation. But that's not the way I'm reading what the board's analysis was and what the CABC's analysis was. There was a phrase that's saying, hey, this looks like error to us. But irrespective, and then they accept the fact that this is good law, as they had to, because it's a final decision. So the board then accepted what you say they said was error and proceeded. I'm sorry to cut you off there. No, no, that's fine. Well, again, Your Honor, so I would submit that the board actually did find that the entire basis for ankylosis was error. And so if there never was ankylosis in the first place, which is what the board found, is what the Veterans Court said the evidence confirmed, then the simple fact that he no longer had ankylosis, which is the only manifestation that both the board and the Veterans Court focused on, the simple fact that he didn't have that one manifestation alone cannot represent the actual change that Section 4.13 requires. And so by basing the finding of improvement on a finding of earlier error in the 2012 examination report, that took this entire case out of Section 4.13. And so the legal error here and the question of law is, can living in this world of a legal fiction, so the Veterans Court said there was no ankylosis, but now we're going to pretend that there was, so that under 4.13 we can find actual improvement. That is the question of law here, is that can we live in this legal fiction so that we can find actual change in Section 4.13. There is also a question, though, in terms of the application of law to fact, and I don't want to be overly repetitive of the questions that Judge Post asked you, but I am a bit concerned just in terms of the jurisdictional concerns. No, I understand, Your Honor, but again, I think the question of law here is once the court found error, then it misinterpreted 4.13 to allow 4.13 to apply to that finding of error. It relied on what it found itself to be an erroneous finding to then shoehorn into a finding of actual improvement. And that is a misinterpretation of the regulation of 4.13 that this court can address. An erroneous finding, is that a factual error that you're complaining about that then gets us to this legal issue? No, Your Honor. Accepting the veteran's court's finding that the evidence confirms the initial diagnosis were an error, if we accept that, we're not asking the court to question that whatsoever, but once we accept that court's finding, then the fact that he never had ankylosis means that not having it now cannot mean actual change, and that's the misinterpretation of the regulation that we believe the veteran's court made. But before I run out of time, Your Honor, I would also like to point out, even taking that out of the equation, I would also like to point out that the veteran's court made at least two factual findings in the first instance that violate this court's holdings in Tadlock and Stinson. And one is that the Section 4.2, that the board is not required to address the ordinary conditions of work if the veteran didn't work during the appeal period. And Section 4.2 clearly states that ratings should be viewed as if the veteran is working or seeking work. And so the veteran's court misinterpreted Section 4.2 there and rendered its own factual findings. But also the veteran's court found that the three pre-reduction, 2013 pre-reduction examinations were more than enough to support the board's findings of actual improvement. But that conflicts with the board's own actions, and that the board remanded three times after the reduction to obtain additional evidence. And if what the court held were true, that the examination reports pre-reduction supported the board's findings, the board wouldn't have had to remand three times in the first place. And the board never directly addressed the adequacy of those exams. And I would submit that it essentially found those exams inadequate, again, because it remanded three times. And so the veteran's court's finding that those examinations were adequate is a finding in the first instance that it should not have made. And if I may reserve the remainder of my time for rebuttal. We'll give you two minutes for rebuttal. Yes, thank you. Mr. Hoang, is it? May it please the Court? This Court should affirm the veteran's court decision because the veteran's court did no more than simply apply the relevant regulations for rating reductions. So you say we should affirm, not dismiss. So to that point, we did argue in the brief that this court does not have jurisdiction because of the fact that the veteran's court only applied relevant law to fact. As Judge Prost said, there's a factual predicate here that underpins all of Mr. Johnson's legal arguments. And that is the fact of whether there was an error in the first instance in his original disability rating. And so without that factual predicate, there is no legal argument here. So you just made it when you just said we should affirm. Affirm or dismiss, Your Honor. Well, there's a difference. So really, in following up on Judge Lori's question, it sounds like your primary argument is that we should dismiss. But if we were to disagree with that, and that you think there's something unjurisdictional, you think we should affirm. Is that what you're trying to say?  I can address the jurisdictional issue further if there are more questions about that, but I can move on. I do want to hear about... He pointed out a very specific thing that he says is the error. So I just want to hear your response to that in terms of whether or not following up on Judge Prost's question on that there is this factual predicate, which it sounds like you were saying in response to Judge Lori's question. I just felt like we got off to a kind of uncertain start. So I do want to hear a little bit more on that. Okay. So what I understand the factual predicate to be is whether Mr. Johnson actually had ankylosis in 2012. And so that factual predicate is the underpinning for all of his legal arguments here. Because if, as Judge Prost said, if he didn't actually have ankylosis, then, I mean, there's no case here. Like, well, you could go back and actually go through a Q process and then reduce his rating that way. But if he does, in fact, actually have ankylosis, then we're in the same spot that we are now in the sense that the VA is allowed to use the standard ratings reduction process to reduce his rating from 40% to 20%. I guess, I mean, there is this phrase. I mean, they do say at page 9 of the appendix, the weight of medical evidence backs the board's view. It confirms the initial examiner's marked at whatever is an error. And then they say setting aside this inconsistency. But if not for that, there wouldn't be a problem here. But the problem is your friend takes that sentence and says that was the basis for the board's decision and it wasn't actually a reduction or a change. So it seems here that they have two alternatives, maybe, because they set aside that conclusion and then they say, but if it's changed, they no longer have it. That's the genesis of the confusion. And I respect that, that, you know. I understand that, Your Honor. I will point out that that language is only in the Veterans Court decision. The board itself seems to have language that kind of indicates the other way, where the board specifically found on Appendix 112, it said that, moreover, to the extent that the findings of ankylosis do not represent erroneous findings, which appears to be the case, then the record essentially demonstrates improvement in Mr. Johnson's disability. So really, I mean, I think to take a step back, the record itself does demonstrate that Mr. Johnson had ankylosis in 2012. That's what it says. Well, I think you would say that that's because we've got a determination in the first instance in the original decision, and that's a final decision under 3.105, and that exists. Is that right? That's right, Your Honor. And also, there's later findings in past 2013 where it was determined that Mr. Johnson no longer had ankylosis. And so putting those two things together, that represents an actual change. But again, these are all factual questions. And so to the extent that Mr. Johnson is arguing whether there is or isn't, like, whether he actually had ankylosis back in 2012, that's the factual predicate for the rest of his arguments. And so without that, there is no legal argument to apply here. I think that's where the jurisdictional part comes in. But ultimately, this is just a standard rating reduction case. And that's different from when the VA would pursue something under COE. And the difference is in the ultimate outcome here. So the VA is not seeking to undo that original final determination of ankylosis. It's just simply trying to put Mr. Johnson at the correct rating that he is right now. Can I ask you just a technical question? What's the difference to the veteran? If there were a COE case in this context, is the veteran required to pay back what he got? There's a determination that this was an erroneous ruling in the first instance. I think the answer is no. Does the government seek to claw back the money that's been paid under what is now determined to have been an erroneous ruling? I believe the veteran would keep that money under 30 days. So there's no different consequence to the veteran, whether it's a COE or whether it's something else. I think in this particular case, there might not be a difference because it's simply a rating reduction. I would submit that in the case where there's a COE and there's a finding that maybe the veteran didn't have a disability in the first place, the service connection would be potentially severed there. And so prospectively, the veteran would lose benefits moving forward. Prospectively, so not retroactive to the original erroneous decision.  But that's in comparison to a simple rating reduction where if the veteran's rating was reduced to zero, he would still have a service connection back to the original finding of disability. Do you want to respond to the final argument or one of the final arguments your friend made on another matter, which is on the work thing, the error he's alleging in terms of the CABC's analysis of what you look at in terms of seeking employment? The final point he made. In terms of that, the board did make those findings. It stated the standard and it determined that it did actually, based on that standard, it did analyze Mr. Johnson's ability to actually function, both in terms of the ordinary conditions of life and work. The board's decision actually does recite that standard. And so there's no evidence to the contrary that they didn't actually consider Mr. Johnson's capability to work. But I think the problem here is that the record reflects that Mr. Johnson wasn't actually working throughout this whole time. And so I think that's reflected in the Veterans Court decision as well, where the court kind of poses the question, well, what is the board supposed to do here if there's no work to be analyzed? In that sense, I think the board carried out its duty under that standard to fully analyze Mr. Johnson's disability and his ability to function under work and life to the extent that it was capable of doing. If the board didn't say anything explicitly about his conditions of work and only mentioned life in the appendix, I think it's appendix page 112, was the Veterans Court really reviewing a factual finding or was the Veterans Court potentially making a factual finding of its own? The Veterans Court was not making a factual finding in the first instance. Because it understood the board to make that finding in the first instance, it's only reviewing. So I think it didn't make any extraneous factual findings to that point beyond what the board had said. Looking at the Veterans Court decision itself is simply just a review of what the board has said on that point. Anything further, Counsel? No, Your Honor. Mr. Murray has two minutes. I would like to address a couple quick things. First of all, as Judge Cunningham mentioned, on page 112 of the appendix, the board only makes a finding as to any purported improvement under the ordinary conditions of life. While it does articulate the standard it's supposed to meet, it doesn't actually meet that standard. It does not make that finding. And the Veterans Court actually essentially acknowledges this. But isn't our standard of review, I mean, we don't review applications of law to that. But the Veterans Court made this finding in the first instance, which violates Tadlock and Stinson here. The Veterans Court found the court can't imagine what the board could have or should have said about work conditions, which essentially acknowledges that the board didn't say anything about work conditions. Also, my colleague here pointed to the one sentence in section 112 that starts with, moreover, to the extent the findings were not or do not represent erroneous findings. I'd like to point out that if you read that one sentence in context of the page before, the board adopts the November 2021 VA examination. And that examination explicitly says, it appears this finding of ankylosis was previously made in error. And so it's clear that the entire decision was based on this finding of error in the earlier examinations. And again, once things are based on that error, that takes us out of 4.13, and the application of that renders the board's decision void in ab initio. I'd like to point out, just summarize that there are two ways to reduce a rating error. There's one way under 4.344 and 4.13 to establish improvement. But improvement requires a change. And if we take that descriptive term, ankylosis, out, then simply there was no change. The second route is to establish cue. And essentially what the Veterans Court did was found error, but then used that error to shoehorn it into a finding of improvement. So the Veterans Court essentially combined and created this hybrid decision that this court should reverse. It's important to note that cue is a much higher burden than just establishing. So it's possible, if I just may conclude, Your Honor, very quickly, it's possible that if this court reverses, finds the board's decision should be found void ab initio, it goes back, given the much higher standard of cue, it's possible that while maybe a preponderance of the evidence might show he never had ankylosis, maybe they can't establish it by cue. And so if the board's decision is void ab initio, Mr. Johnson would get his 40% ratings back until VA can establish either cue or issue a new rating reduction decision, finding actual improvement based on the overall disability picture of the ankylosis. Thank you to both counsel. The case is submitted.